UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E-DATA CORPORATION,

    Plaintiff,

v.

CORBIS CORPORATION, *et al.*,

    Defendants.

Case No. C04-1733L

ORDER GRANTING SUMMARY JUDGMENT AND REQUESTING ADDITIONAL BRIEFING ON THE ISSUE OF ATTORNEY'S FEES

This matter comes before the Court on the Motion for Summary Judgment of Noninfringement (Dkt. # 32) filed by defendant Getty Images, Inc. ("Getty"). For the reasons set forth below, the motion is granted. The Court, however, defers ruling on Getty's request that it be awarded attorney's fees under 35 U.S.C. § 285 until the Court has received additional briefing from the parties.

## I. BACKGROUND

E-Data Corporation ("E-Data") is the owner of U.S. Patent No. 4,528,643 (the "'643 Patent"), entitled "a system for reproducing information in material objects at a point of sale location." The '643 Patent describes the problems with the prior art system for putting information on material objects, such as a compact disc ("CD"), and then distributing those material objects to retail stores for sale. The system disclosed in the '643 Patent eliminates some of the inefficiencies in the prior art by creating a central control station (described as an

"information control machine" or "ICM") that communicates electronically with a number of manufacturing stations (described as "information manufacturing machines" or "IMMs"). The IMMs are located at "point of sale locations," which the '643 Patent describes as places "where a consumer goes to purchase material objects embodying predetermined or preselected information." A consumer goes to a point of sale location and selects the desired information she wants to purchase. The IMM then obtains authorization from the ICM to copy the selected information onto a specified material object. Once authorized, the IMM copies the selected information onto a blank material object, which is then provided to the customer.[1]

Getty is a Delaware corporation engaged in the business of licensing images, such as photographs and illustrations. Although Getty asserts that it cannot monitor how all of its images are used, it claims that its customers are generally businesses such as advertising agencies or media companies that use the images in newspapers, magazines, and promotional materials. Getty conducts its licensing business primarily through its website. Getty's customers generally download images from the website onto computers, after which, the customers incorporate the images into other media.

On May 17, 2004, E-Data filed a complaint in the Western District of Texas claiming that Getty and Corbis Corporation violated its rights in the '643 Patent. E-Data asserts that the sale of images through Getty's website (1) literally infringes the patent, (2) infringes under the doctrine of equivalents, and (3) indirectly infringes the patent. See 35 U.S.C. §§ 271(a), (b) & (c). On July 8, 2004, the case was transferred to this Court.

## II. DISCUSSION

**A.    Standard of Review.**

As in other civil disputes, summary judgment in patent infringement proceedings is

---

[1] The '643 Patent is more fully described in Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323 (Fed. Cir. 2001).

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1 proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together
2 with the affidavits, if any, show that there is no genuine issue as to any material fact and that the
3 moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

4     A court must construe all facts in favor of the party opposing summary judgment. See
5 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once the moving party has
6 demonstrated the absence of a genuine issue of fact as to one or more of the essential elements
7 of a claim or defense, the opposing party must make an affirmative showing on all matters
8 placed at issue by the motion as to which the opposing party has the burden of proof at trial. See
9 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a situation Fed. R. Civ. P. 56(e)
10 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the
11 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts
12 showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)); see
13 also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)
14 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more
15 than simply show that there is some metaphysical doubt as to the material facts").

16 **B.     Claim Construction.**

17     A determination of infringement requires a two step analysis. "First, the claim must be
18 properly construed to determine its scope and meaning.  Second, the claim as properly construed
19 must be compared to the accused device or process."  Carroll Touch, Inc. v. Electro Mechanical
20 Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993).  With regard to the first step, the parties agree
21 that the terms at issue here have previously been construed by the Federal Circuit in Interactive
22 Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323 (9th Cir. 2001), and that these
23 constructions are binding on this Court.  As a result, this Court will rely on the claim
24 constructions set forth in Interactive Gift.

25     The second step of the infringement analysis, determining whether a particular device
26 infringes a properly construed claim, is generally a question of fact.  See Fromson v. Advance

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1  Offset Plate, Inc., 720 F.2d 1565, 1569 (Fed. Cir. 1983).  Nevertheless, summary judgment is

2  appropriate where, *inter alia*, no reasonable fact finder could find infringement.  See

3  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 n.8 (1997).

4      **1.**    **Construction Under Interactive Gift.**

5      Getty argues that for the purposes of its summary judgment motion, the two relevant

6  limitations in the '643 Patent are the terms "material object" and "point of sale location."  In

7  Interactive Gift, the Federal Circuit construed the term "material object"

> to be a tangible medium or device in which information can be embodied, fixed, or stored, other than temporarily, and from which the information embodied therein can be perceived, reproduced, used or otherwise communicated, either directly or with the aid of another machine or device.  A material object must be offered for sale, and be purchasable, at point of sale locations where at least one IMM is located.  Further, a material object must be separate and distinct from the IMM, removed from the IMM after purchase, and intended for use on a device separate from the IMM either at the point of sale location or elsewhere.  'Material object' does not encompass the hard disk component of a personal computer.  Finally, a material object need not be offered for sale independently from the information that may be reproduced onto the material object, that is, as a blank.

14 Interactive Gift, 256 F.3d at 1338.

15      The Federal Circuit construed the term "point of sale location" to mean "'a location

16 where a consumer goes to purchase material objects embodying predetermined or preselected

17 information.'"  Id. at 1333 (citing '643 Patent, col. 5, ll. 47-50).  The Federal Circuit further held

18 that, although a home could be a point of sale location, there was a "great likelihood that a point

19 of sale location will not be a home, given that: (1) [E-Data's] asserted definition . . . requires

20 that a consumer go to a point of sale location to purchase material objects, and (2) the

21 specification requires . . . that the IMM be located at the point of sale location."  Id. at 1333

22 (citing '643 Patent, col. 5, ll. 32-33, 48-49).

23      **2.**    **Comparison to Getty's System.**

24           **a.**    **Literal Infringement.**

25      To prove literal infringement of its patent, E-Data must show that the system employed

26 by Getty contains each of the limitations set forth in the claim.  See Bowers v. Baystate Techs.,

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1  320 F.3d 1317, 1334 (Fed. Cir.), cert. denied, 539 U.S. 928 (2003).  "If even one limitation is
2  missing or not met as claimed, there is no literal infringement."  Mas-Hamilton Group v.
3  LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998).  As a result, summary judgment in favor of
4  Getty is proper "when no reasonable jury could find that every limitation recited in a properly
5  construed claim is found in an accused device."  Spectrum Int'l. v. Sterilite Corp., 164 F.3d
6  1372, 1380 (Fed. Cir. 1998).

7        E-Data's infringement claim is based on the theory that Getty's system for licensing
8  images converts the customer's personal computer into a "point of sale location" at which
9  information is copied onto "material objects."  A comparison of Getty's system and the system
10 disclosed in the '643 Patent makes it clear that the systems are different in at least two
11 significant respects.  First, Getty only sells information through its website.  Although that
12 information may subsequently be copied onto a "material object," this occurs after the sale of
13 the information to the customer.  The system described by the '643 Patent, on the other hand,
14 does not just sell information, but sells information that has been copied onto a material object.
15 As the Interactive Gift court made clear, the '643 Patent requires not just the purchase of
16 information, but also "the *purchase of the material object* by the consumer."  256 F.3d at 1338
17 (emphasis added).[2]

18       Second, because Getty does not sell material objects, its system for licensing and
19 downloading images does not convert the customer's personal computer into a "point of sale
20 location."  Interactive Gift explicitly held that the definition of "point of sale location" requires
21 that a customer go to that point of sale location to purchase material objects.  See id. at 1333,
22 1336.  Indeed, "[a] material object must be offered for sale, and be purchasable, at point of sale

23

---

24     [2]At oral argument, counsel for E-Data claimed for the first time that the property rights licensed
25  along with the Getty image were material objects under the '643 Patent.  This interpretation is foreclosed
    by Interactive Gifts.  See 256 F.3d at 1335 (holding that material object is a "tangible medium or
26  device").

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1 locations. . . ." Id.  It is undisputed that when Getty's customers download information from
2 Getty's website, they do not purchase a material object.  Furthermore, E-Data concedes that the
3 "typical" licensing of a Getty image occurs at a home or office where no objects are offered for
4 sale.  See Opp. at p. 11.  As Interactive Gift made clear, a PC in a home or office could only be a
5 point of sale location if the customer went to the PC to purchase the material object.  See 256
6 F.3d at 1333.  As E-Data acknowledges, no such purchase occurs here.

Because Getty does not sell material objects and because the typical licensing and downloading of one of Getty's images does not convert a PC into a point of sale location, E-Data has not shown, and no reasonable jury could conclude, that the system used by Getty contains all of the limitations in the '643 Patent.

### b. Doctrine of Equivalents.

Under the doctrine of equivalents, "a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  Warner-Jenkinson, 520 U.S. at 21.  The application of the doctrine is an objective inquiry made on an element by element basis.  See id. at 40.  If a single limitation of a claim or its equivalent is not present in the accused device, then that device cannot infringe under the doctrine of equivalents.  See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 936 (Fed. Cir. 1987) (en banc).  A claim of infringement under the doctrine of equivalents may be decided on summary judgment "'where the evidence is such that no reasonable jury could determine two elements to be equivalent.'"  Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353-1354 (Fed. Cir. 1998) (quoting Warner-Jenkinson, 520 U.S. at 39 n.8 (internal brackets and ellipses omitted)).

Getty's system does not infringe the '643 Patent under the doctrine of equivalents.  As noted above, the '643 Patent requires the sale of a material object.  Getty's system does not contain any equivalent requirement.  To the contrary, Getty's system only sells information, and

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1  Getty's customers are not required to purchase a material object along with that information. To
2  hold otherwise would equate the sale of the information with the sale of the object containing
3  the information. Such a conclusion has been foreclosed by the <u>Interactive Gift</u> court. <u>See</u> 256
4  F.3d at 1336 ("[a] material object cannot be the information itself"). In addition, rendering these
5  two systems equivalent would eliminate the "material object" limitation from the '643 Patent.
6  The doctrine of equivalents may not be applied in such a broad manner. <u>See</u> <u>Warner-Jenkinson</u>,
7  520 U.S. at 29 ("It is important to ensure that the application of the doctrine [of equivalents],
8  even as applied to an individual element, is not allowed such broad play as to effectively
9  eliminate that element in its entirety").

**C.    Indirect Infringement.**

In addition to its claims of direct infringement, E-Data argues that Getty has (1) induced others to infringe the '643 Patent in violation of 35 U.S.C. § 271(b),[3] and (2) contributorily induced infringement in violation of 35 U.S.C. § 271(c).[4]

E-Data's indirect infringement claims suffer from several flaws. First, indirect infringement claims require a showing that some third party has committed direct infringement.

---

[3] Under § 271(b), "whoever actively induces infringement of a patent shall be liable as an infringer." To prove that Getty induced infringement, E-Data must show that: (1) there was direct infringement by the induced party; (2) Getty had knowledge of the asserted patents; (3) Getty possessed specific intent and not merely knowledge of the acts alleged to induce; and (4) there was active inducement of the direct infringer. See Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys. LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003).

[4] To succeed on its contributory infringement claim, E-Data must show that Getty:
offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1 "Absent direct infringement of the patent claims, there can be neither contributory infringement,
2 nor inducement of infringement." <u>Met-Coil Sys. v. Korners Unlimited</u>, 803 F.2d 684, 687 (Fed.
3 Cir. 1986) (citing <u>Porter v. Farmers Supply Serv.</u>, 790 F.2d 882, 884 (Fed. Cir. 1986);
4 <u>Stukenborg v. Teledyne, Inc.</u>, 441 F.2d 1069, 1072 (9th Cir. 1971)).  E-Data, however, has not
5 identified any party that has directly infringed its patent, much less identified how Getty
6 contributed to or induced a party to infringe.

7      E-Data attempts to sidestep this critical flaw by arguing that Getty's customers
8 necessarily infringe the patent when they use Getty's website to license and download images.
9 E-Data states that discovery will likely show that Getty's "business model" requires it to "extol[]
10 the convenience of being able to use its images (e.g., in desktop publishing) at a user's PC.
11 Getty is well aware that its customers require the ability to print the images they acquire and
12 without providing this ability, Getty's business model would be unsuccessful." Opp. at p. 15.

13      To test this theory, the Court must refer to the scope of the claims at issue and examine
14 the evidence before the Court to determine whether Getty's system infringes the claim. <u>See</u> <u>C.R.</u>
15 <u>Bard., Inc. v. Advanced Cardiovascular Systems</u>, 911 F.2d 670, 673 (Fed. Cir. 1990).  Turning
16 first to the available facts, E-Data acknowledges that "[m]aking a purchase from Getty generally
17 involves selecting specific information . . . from Getty's database, obtaining price information
18 from Getty, agreeing to Getty's licensing terms, paying for the purchase of information,
19 downloading the information to a personal computer ("PC"), and converting the information to a
20 material object." Opp. at p. 11.  E-Data argues that, in using this system, "Getty provides the
21 two ingredients that are essential in creating a material object: the information, and the specific
22 license to reproduce the information on a blank carrier." <u>Id.</u>

23      Assuming that Getty's system functions as E-Data suggests, neither Getty, nor Getty's
24 customers, have violated the '643 Patent. As noted above, the '643 Patent requires the *sale of a*
25 *material object*.  Even if Getty provides two of the ingredients necessary to *create* a material
26 object with information embodied onto it, Getty still has not *sold* a material object. Indeed, E-

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

-8-

1  Data acknowledges that "making a purchase from Getty generally involves . . . the purchase of
2  information." Opp. at 11.  Nowhere does E-Data allege that a material object has been sold,
3  either by Getty or by anyone else.[5]
4        Finally, because the system by which Getty generally sells images to customers does not
5  violate the '643 Patent, it must necessarily mean that there are substantial non-infringing uses
6  for this system.  Where a system has substantial noninfringing uses, claims for induced
7  infringement and contributory infringement must fail.  See Warner Lambert Co. v. Apotex
8  Corp., 316 F.3d 1348, 1365 (Fed. Cir. 2003) ("where a product has substantial noninfringing
9  uses, intent to induce infringement cannot be inferred"); Switzer Bros., Inc. v. Locklin, 297 F.2d
10 39, 46 (7th Cir. 1961) (contributory infringement does not apply to system "'suitable for
11 substantial noninfringing use'") (quoting 35 U.S.C. § 271(c)), cert. denied, 369 U.S. 851 (1962).
12 This constitutes another, independent reason for denying the indirect infringement claims.

**D.    E-Data's Rule 56(f) Motion.**

14       E-Data urges this Court either to postpone granting the motion for summary judgment or
15 to deny it outright because E-Data has not had an opportunity to conduct the discovery

---

[5] During oral argument, E-Data described a hypothetical in which the Getty system could be used in a manner that it claimed would violate the '643 Patent.  That hypothetical required a Getty customer to access Getty's website from a retail store (for example, Kinko's) that provided both internet access and also sold CDs, or other devices for storing data.  If the Getty customer downloaded the image at Kinko's and stored it on a CD she had also purchased from Kinko's, E-Data argued that the customer would have infringed the patent and Getty would have contributorily infringed.  This hypothetical is significant for four reasons.  First, it tacitly acknowledges that the '643 Patent is not infringed unless there has been a sale of a material object.  Second, it requires a Getty customer to use the system in a manner that is different from the way E-Data acknowledges that it is generally used:  the Kinko's customer is not accessing the website from her PC or downloading the information to her PC.  Third, this hypothetical is at odds with the "business model" that E-Data believes Getty has adopted.  Finally, the elaborateness of the hypothetical betrays the weaknesses in E-Data's claim.  If, for example, someone accessed the Getty image on a Kinko's computer, but then saved it onto a disc she had brought with her, (or, for that matter, accessed the website from an internet café that only sold coffee and pastries, but not blank CDs) the '643 Patent would not be infringed.

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1  necessary to support its claims. Fed. R. Civ. P. 56(f) states:

2  Should it appear from the affidavits of a party opposing the motion that the party
3  cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or
4  discovery to be had or may make such other order as is just.

5  E-Data argues that a continuance is especially appropriate here, where the motion for summary

6  judgment has been filed early in the litigation and the parties have had only a limited opportunity

7  to conduct discovery. A Rule 56(f) motion must be granted when "'the non-moving party has

8  not had the opportunity to discover information essential to its opposition.'" Metabolife Int'l,

9  Inv. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (quoting Anderson, 477 U.S. at 250 n.5).

10  The information that E-Data seeks to discover,[6] however, will not alter the identified

11  failings in its infringement claims. These failings are not based on factual disputes or factual

12  uncertainties; they are based on a direct application of the patent claims as construed by the

13  Federal Circuit. No amount of additional discovery will alter the undisputed fact that the

14  accused system used by Getty only conveys information, not information copied onto a material

15  object, to purchasers. Similarly, if E-Data were allowed to conduct further discovery, it would

16  not be able to overcome the fact that, even under E-Data's theory of how Getty's system

17  operates, that system has substantial noninfringing uses. Since additional discovery will not

18  save E-Data's claims, the Rule 56(f) motion is denied. See Maljack Prods., Inc. v. GoodTimes

19  Home Video Corp., 81 F.3d 881, 888 (9th Cir. 1996) (no abuse of discretion where the movant

20  has failed to show how additional discovery would have precluded summary judgment); see also

21

---

22  [6]E-Data argues that discovery of the following information will help it prove its claims:
23  (1) the manner of operation of Getty's server and how it converts a personal computer
    into an IMM, enabling it to download and print an image; (2) Getty's knowledge of how
24  its customers use its server to download and print images; (3) Getty's marketing materials;
    (4) Getty's requirement that its customers include Getty's name when they use one of its
25  images; and (5) Getty's source code and software.
26  Opp. at pp 8-9.

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004) (summary judgment in the face of requests for additional discovery is appropriate where discovery would be "fruitless" with respect to the proof of a viable claim).

**E.      Award of Attorney's Fees or Costs.**

In patent infringement claims, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285.  Getty has argued that this is an exceptional case under § 285. "A trial court undertakes a two-step inquiry when adjudicating a request for attorney fees. The court examines first whether there is clear and convincing evidence that the case is exceptional, and second, whether an award of attorney fees to the prevailing party is warranted." Evident Corp. v. Church & Dwight Co., 399 F.3d 1310, 1315 (Fed. Cir. 2005).

As Getty has acknowledged, an award of attorney's fees is a serious matter that should not be undertaken lightly.  In order to give the issue the full consideration it deserves, this Court will require additional briefing on the issue (not to exceed five pages for each side with no reply brief) that lays out, in detail, Getty's rationale for seeking fees under § 285 and why E-Data feels an award of fees is not warranted.  As indicated below, the motion for attorney's fees will be noted on the Court's calendar for Friday, July 22, 2005.  Getty's motion and E-Data's response will be due in accordance with the non-dispositive motions and briefing schedule set forth in Local CR 7(d)(3).[7]

### III.  CONCLUSION

For all of the foregoing reasons, the Motion for Summary Judgment (Dkt. # 32) is GRANTED.  This Court defers ruling on Getty's request for attorney's fees until it has received

---

[7] E-Data's submissions in opposition to Getty's summary judgment motion did not comply with this Court's formatting requirements. See Local Rule CR 10(e).  These formatting requirements are mandatory in the Western District of Washington and the Court expects that E-Data will follow them in the future.

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES

1 additional briefing from the parties.[8]  The Clerk of the Court is directed to note Getty's motion
2 for attorney's fees under 35 U.S.C. § 285 on the Court's calendar for Friday, July 22, 2005.

5       DATED this 23rd day of May, 2005.

								/s/ Robert S. Lasnik
								Robert S. Lasnik
								United States District Judge

---

[8]The parties are encouraged to continue efforts toward resolution of the case that would not require the Court to rule on this pending motion.  Any award of attorney's fees will not include fees expended from this point forward.

ORDER GRANTING SUMMARY
JUDGMENT AND REQUESTING
ADDITIONAL BRIEFING ON THE ISSUE
OF ATTORNEY'S FEES